## THE SCOW NO. 15.

(Circuit Court of Appeals, Second Circuit. March 1, 1899.)

### No. 101.

1. WHARFAGE—STATUTORY RATES—SCOWS.
    Under Laws N. Y. 1882, c. 410, § 798, classifying vessels, and fixing the rates for wharfage accordingly, a scow engaged in carrying stone should be classed with the description "market boats and barges."

2. SAME—CUSTOM.
    A customary rate of wharfage for scows cannot control the rates fixed by Laws N. Y. 1882, c. 410, § 798, since it includes all vessels engaged in carrying freight or passengers.

3. MARITIME LIENS—DOMESTIC VESSELS.
    A maritime lien is created by the furnishing of wharfage to a domestic vessel.[1]

Appeal from the District Court of the United States for the Southern District of New York.

[1] For maritime liens as to supplies and services, see note to The George Dumois, 15 C. C. A. 679.

This cause comes here upon cross appeals from a decree of the district court, Southern district of New York, awarding the libelant $32.50 for 26 days' wharfage, for the use and occupation of a berth at the pier at foot of 134th street, North river. The determination of the cause involves the construction of Laws N. Y. 1882, c. 410, § 798, which reads as follows:

"Sec. 798. It shall be lawful to charge and receive, within the city of New York, wharfage and dockage at the following rates, namely: From every vessel that uses or makes fast to any pier, wharf, or bulk-head within said city, or makes fast to any vessel lying at such pier, wharf, or bulk-head, or to any other vessel lying outside of such vessel, for every day or part of a day, except as hereinafter provided, as follows: From every vessel of two hundred tons burden and under, two cents per ton, and for every vessel over two hundred tons burden, two cents per ton for each of the first two hundred tons, and one-half of one cent per ton for every additional ton, except that, save as hereinafter provided, vessels known as North river barges, market boats, and barges, sloops employed upon the rivers and waters of this state, and schooners exclusively employed upon the rivers and waters of this state, shall pay for every such vessel under the burden of fifty tons, at the rate of fifty cents per day; for every such vessel of the burden of fifty tons, and under the burden of one hundred tons, at the rate of sixty-two and a half cents per day; for every such vessel of the burden of one hundred tons, and under the burden of one hundred and fifty tons, at the rate of seventy-five cents per day; for every such vessel of the burden of one hundred and fifty tons, and under the burden of two hundred tons, at the rate of eighty-seven and a half cents per day; for every such vessel of the burden of two hundred tons, and under the burden of two hundred and fifty tons, at the rate of one hundred cents per day; for every such vessel of the burden of two hundred and fifty tons, and under the burden of three hundred tons, at the rate of one hundred and twelve and a half cents per day; for every such vessel of the burden of three hundred tons, and under the burden of three hundred and fifty tons, at the rate of one hundred and twenty-five cents per day; for every such vessel of the burden of three hundred and fifty tons, and under the burden of four hundred tons, at the rate of one hundred and thirty-seven and a half cents per day; for every such vessel of the burden of four hundred tons, and under the burden of four hundred and fifty tons, at the rate of one dollar and fifty cents per day; for every such vessel of the burden of four hundred and fifty tons, and under the burden of five hundred tons, at the rate of one hundred and sixty-two and a half cents per day; for every such vessel of the burden of five hundred tons, and under the burden of five hundred and fifty tons, at the rate of one hundred and seventy-five cents per day; for every such vessel of the burden of five hundred and fifty tons, and under the burden of six hundred tons, at the rate of one hundred and eighty-seven and a half cents per day; for every such vessel of the burden of six hundred tons and upwards, to pay twelve and a half cents, in addition for every fifty tons in addition to the rate last mentioned, for every day such ship or vessel shall use or be made fast to any of the said wharves: but no boat or vessel over fifty tons burden shall pay less than fifty cents for a day or a part of a day, and the class of sailing vessels now known as lighters shall be at one-half the first above rates. Every other vessel, making fast to a vessel lying at any pier, wharf, or bulk-head within said city, or to another vessel outside of such vessel, or at an anchor within any slip or basin, when not receiving or discharging cargo or ballast, one-half the first above rates; and from every vessel or floating structure, other than those above named, or used for transportation of freight or passengers, double the first above rates, except that floating grain elevators shall pay one-half the first above rates; and every vessel that shall leave a pier, wharf, bulk-head, slip or basin, without first paying the wharfage or dockage due thereon, after being demanded of the owner, consignee, or person in charge of the vessel, shall be liable to pay double the rates established by this section."

The opinion of the district court is reported in 88 Fed. 305.

Peter Alexander, for libelant.

Peter S. Carter, for claimants.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. The section referred to (Laws N. Y. 1882, c. 410, § 798) is so ungrammatically phrased that it is not susceptible of any literal construction which would not lead to some inconsistency or absurdity. In such cases interpretation according to intent is peculiarly applicable. While we do not entirely agree with the reasoning by which the district court reached its conclusion, we do concur in that conclusion, which requires vessels like claimant's to pay the same rate as barges, which they resemble more nearly than they do any other vessel specifically enumerated in the section. The contention of the claimant that wharfage should be at the rate of 50 cents cannot be sustained, under section 800 of the same statute, since the evidence does not show that the vessel was "engaged in freighting brick on the Hudson river"; nor on any theory of a customary rate for scows of this description, since the statute is manifestly intended to be comprehensive of all vessels engaged in transporting freight or passengers.

There is no force in the suggestion that there is no general maritime lien against a domestic vessel for wharfage. The converse is held, upon sound reasoning, in The Allianca, 56 Fed. 609; The Advance, 60 Fed. 766; The Kate Tremaine, 5 Ben. 60, Fed. Cas. No. 7,622; and Woodruff v. One Covered Scow, 30 Fed. 269; and we find nothing to weaken the authority of those cases in the circumstance that in Ex parte Easton, 95 U. S. 68, the supreme court declined to pass upon a question not before it. Nor do we consider that The Lottawanna, 21 Wall. 558, is an analogous case, dealing as it did wholly with the question of materials and supplies. The decree of the district court is affirmed, but, since both sides appealed, without interest or costs.